Spain, J. (dissenting).
Because, in my view, the record does not support the decision of respondent Board of Parole to order a rescission hearing nor does it reflect the presence of substantial evidence justifying the Board’s decision to rescind parole (see 9 NYCRR 8002.5 [b] [2] [i]; [d] [1]), I respectfully dissent.
Petitioner was sentenced in 1980 — after rejecting a plea offer of 5 to 15 years — to 25 years to life in prison following a trial for his nonshooter role at age 22 in a 1978 armed robbery New York City police officer David Guttenberg unexpectedly walked in on the robbery and was tragically shot and killed by petitioner’s armed accomplice, resulting in petitioner’s conviction of felony murder and other crimes. In August 2009, at age 53, after serving over 31 years in prison and at his third appearance before the Board, petitioner was granted parole with an open release date of September 29, 2009, subject to certain conditions. At the parole hearing, the Board considered all relevant factors including petitioner’s institutional record, which reflected his exemplary educational and program accomplishments, his solid release plans and the seriousness of his offense (see Executive Law § 259-i). Also considered were an opposition letter from the New York City Police Commissioner and petitioner’s extensive 1980 presentence report, which reflects that Guttenberg’s widow, the mother of his four children, was interviewed by the Probation Department and expressed the grief and torment of his surviving family members (see CPL 390.30 [3]). The Board’s decision to grant discretionary release reflected its determination that petitioner “will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law” (Executive Law § 259-i [2] [c] [A]).
Unfortunately, it appears that the Kings County District Attorney did not notify Guttenberg’s family members of their right to submit victim impact statements to the Board or to appear before the Board (see CPL 440.50 [1]; see also Executive Law § 646-a), and no such statements were submitted. This case, once again, “reveals an unfortunate consequence of the lack of a statute or rule requiring the Board to timely notify crime victims of when an inmate will be considered for parole” (Matter of Pugh v New York State Bd. of Parole, 19 AD3d 991, 992 n [2005], lv denied 5 NY3d 713 [2005] [emphasis added]).
Following media outcry and just days before petitioner’s release date, the Board temporarily suspended his parole release for “Records Completion,” and thereafter held a victim impact meeting at which Guttenberg family members provided state *1516 ments recounting their ongoing grief over their loss. The Board then held a rescission hearing in October 2010, and thereafter rescinded the prior grant of parole, denied parole, and imposed a 24-month hold, characterizing as “new information” the “compelling statements made by the [officer’s] family” regarding their loss and anguish since, and the ongoing impact of, his death. The Board reversed itself and, although no new information was elicited regarding petitioner or the crime, concluded that parole release “would so deprecate the serious nature of the instant offense as to undermine respect for the law.”
As relevant here, the Board has broad discretion to temporarily suspend a parole release date, but only upon a finding that “significant information . . . existed . . . where such information was not known by the [B]oard” (9 NYCRR 8002.5 [b] [2] [i]; see Matter of Raheem v New York State Bd. of Parole, 66 AD3d 1270, 1272 [2009], lv denied 14 NY3d 702 [2010]; Matter of Pugh v New York State Bd. of Parole, 19 AD3d at 992). In my view, while the recent statements of the ongoing grief of the officer’s family are undeniably compelling, indeed heartbreaking, they are not the type of “new” information that was “unknown” to the Board at the time it granted parole, so as to justify either a temporary or a full rescission of parole (see e.g. Matter of Brooks v Travis, 19 AD3d 901, 901-902 [2005]). That is, the officer’s wife had been interviewed by the Probation Department at the time of sentencing as reflected in the presentence report (compare Matter of Raheem v New York State Bd. of Parole, 66 AD3d at 1272). Clearly, her ongoing loss and grief and that of their children and other family members cannot be said to have been unknown, unanticipated or, unfortunately, unusual for a surviving family. While the family’s “actual subjective experience is clearly significant” (Matter of Raheem v New York State Bd. of Parole, 66 AD3d at 1272) and certainly an appropriate factor for the Board to consider in the determination of whether parole should be granted, it was not unknown and it should not have been considered as — and did not constitute — information that was not previously known so as to upend the grant of parole.
Moreover, the legislative framework governing parole decisions clearly contemplates that while the Board may waive the requirement, victims ordinarily will be heard prior to — not after — a parole determination, and for good reasons (see Executive Law § 259-i [2] [c] [A] [v]; 9 NYCRR 8002.4 [d]). This should remain the practice, with only rare, limited exceptions. The troubling practice followed here of failing to notify a deceased victim’s family of an inmate’s appearance before the Board, and *1517 of foregoing providing victim impact statements until parole has been granted after a hearing, subverts the entire process (see e.g. Matter of Diaz v Evans, 90 AD3d 1371, 1372 [2011]). Courts should be loathe to condone what could become a trend in the parole process in which certain victim impact statements are held back until after a decision to grant parole is made, forcing the Board to confront unabashed media frenzy, public pressure and familial outrage, and to then entertain newly drafted but belated victim impact statements aimed at undoing considered Board decisions awarding parole.
Finally, those who oppose petitioner’s parole release openly advocate the recurring position that an inmate convicted for the death of a law enforcement officer — even a nonshooter convicted of felony murder, as here — should never be released on parole. It bears emphasis that this was not and is not the law. Even under New York’s most recent murder in the first degree statute, only an intentional killing by a defendant, or commanded by a defendant, would quality for life without the possibility of parole (see Penal Law §§ 70.00 [5]; 125.27 [1] [a] [i], [vii]; People v Mateo, 2 NY3d 383, 404-405 [2004], cert denied 542 US 946 [2004]; see also Penal Law §§ 125.25 [5]; 125.26 [1]). Petitioner’s conviction and sentence here allow for parole release. In my view, given the overwhelming evidence before the Board in 2009 supporting its conclusion that parole is appropriate (see Executive Law § 259-i [2] [c] [A]), I cannot conclude — even based upon the belated but compelling victim impact statements— that petitioner was “never rightfully entitled” to parole release so as to justify parole rescission (Matter of Tremarco v New York State Bd. of Parole, 87 AD2d 114, 119 [1982], appeal dismissed 58 NY2d 968 [1983]; accord Matter of De Zimm v New York State Bd. of Parole, 135 AD2d 66, 67 n 2 [1988]).
Adjudged that the determination is confirmed, without costs, and petition dismissed.